# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **LEONARD O. POWERS,** ) | |
| Plaintiff ) | |
| ) | **AMENDED REPORT AND** |
| ) | **RECOMMENDATION** |
| ) | |
| v. ) | Case No. 1:09cv00055 |
| ) | |
| **EQUITABLE PRODUCTION** ) | |
| **COMPANY, etc.,** ) | |
| Defendant ) | |

This case comes before the court on defendant's Motion To Dismiss, (Docket Item No. 7) ("Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition amending its previous Report and Recommendation entered October 8, 2009.

## *I. Facts*

The plaintiff, Leonard O. Powers, acting pro se, filed this suit against "Equitable Production Company, EQT, (aka Equitable Resources, EREX, Equitable, EPC et al)" ("Equitable"). The Complaint, which states that Leonard's claims lie in tort, property damage and products liability, contains an eight-page collection of disjointed factual assertions referencing numerous attached exhibits without further explanation. The additional last two and one-half pages list several requests for relief.

-1-

From repeated readings of the Complaint and all attachments, I have gleaned that Powers asserts that certain tracts of land in which he owns an interest in Dickenson County, Virginia, have been subjected to a forced pooling under the Virginia Gas and Oil Act, §§ 45.1-361.1 *et seq.,* to allow for exploration and collection of coalbed methane gas by Equitable. From the specific relief requested, it appears that Powers seeks to quiet title to the tracts, to obtain an accounting from Equitable as to the production of one of the wells located on these tracts and to recover royalty payments owed to him by Equitable. The Complaint alleges that representatives of Equitable, during the permitting process before the Virginia Gas and Oil Board, ("the Board"), falsely represented that Equitable owned the coal rights to these tracts of land, and, therefore, also owned the rights to coalbed methane. The Complaint alleges that certain representatives of Equitable testified falsely before the Board regarding the ownerships of these tracts. The Complaint also alleges that the plaintiff was told by a representative of the Board that any royalties owed from gas production from these tracts of land would be placed in escrow pending a court's determination regarding who owned the rights to the methane. The Complaint alleges that Equitable is taking methane from these tracts, but it is not placing any royalty payments in escrow for one of these tracts.

The Complaint does not reference a federal claim. The Complaint does not allege the citizenship of the parties. The Complaint also makes no specific request for an award of compensatory damages. The Complaint does state: "The Plaintiff feels [Equitable]... should have to pay $5,000 per acre for Gas and Oil plus 12.5% royalty with no post production costs from the Net on ... any wells on or involving Powers' land." The Complaint does not assert that this amount is due based on any agreement

or the fair market value of the resources. Instead, the Complaint references a portion of a 1994 Order of the Board which sets out the compensation royalty rate of 12.5 percent of net proceeds for those owners who were force pooled. (Exhibit D4 to Complaint.) The Complaint also seeks $10 million in punitive damages for, among other allegations:

> ... Conspiracy to falsify Public Records and move back taxes (over $2,000) from one tract of land ... to another Tract that had no tax # and had never been taxed; [Equitable] ... did move these taxes, causing this tract of land to be posted for sale twice (1998 & 2000) for back taxes; [Equitable] employees lied about these taxes...
>
> [H]ardship from being what [the plaintiff] feel[s] ... disrespected by these large companies. [The plaintiff feels] that some have committed perjury, felonies, and maybe other wrong doings. It is time these companies should have to pay for these deeds.
>
> ... Pain and suffering for having our land put up for sale, twice, because of [Equitable], agents and others. A lot of "sweat and tears" went into saving the land-twice. And more pain and suffering, wondering if it is going to be put up for sale again. Pain and suffering for the illegal manipulation of public records concerning our property. It creates a feeling of helplessness and damages the psyche when someone tries to take your property from you, especially when it is done in a devious way.

In response to the Motion, the plaintiff has filed an affidavit stating that he is a resident of Idaho. Equitable admits in the Motion that it is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.

*II. Analysis*

Equitable has moved to dismiss the plaintiff's claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) and for failure to state a claim for relief under Rule 12(b)(6). I will first address Equitable's motion to dismiss for lack of subject matter jurisdiction.

At the outset, I note that this court must construe Powers's Complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (Supreme Court held that the allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by attorneys). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff.... In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). In this case, the Complaint does not contain any basis or factual assertion to establish subject matter jurisdiction. The plaintiff has filed an affidavit in response to the Motion stating that he is a resident of Idaho. Equitable, in its Motion, states that it is a citizen of the state of Pennsylvania. *See* 28 U.S.C.A. §1332(c)(1) (West 2006) (corporation deemed citizen of state in which it is incorporated and state where it has principal place of business). Therefore, I find that there is diversity of citizenship. I, thus, turn my attention to determining whether the jurisdictional amount in controversy has been

established.

Title 28 U.S.C. § 1332(a)(1) states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States...." In ruling on a motion to dismiss based solely on the ground of lack of jurisdictional amount, the plaintiff's allegations, in general, must be taken as true. *See Hlavaty v. Muffitt*, 190 F. Supp 541, 542 (W.D. Va. 1960) (citing *Gibbs v. Buck,* 307 U.S. 66 (1939)). The plaintiff's allegations regarding the amount in controversy will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). "Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995). Futhermore, a claim for punitive damages may be used to satisfy the jurisdictional amount in controversy if it is possible for the jury to award punitive damages under the applicable state law. *See Ryan v. State Farm Mut. Auto Ins. Co.*, 934 F.2d 276, 277 (11th Cir. 1991); *Klepper v. First Am. Bank*, 916 F.2d 337, 340-41 (6th Cir. 1990). Also, when an action turns on state law, the court must look to state law to determine the availability and measure of compensatory and punitive damages which may be awarded. *See Roberson v. Dale*, 464 F. Supp. 680, 683 (M.D. N.C. 1979) (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352 (1961)).

In this case, the Complaint does not contain a demand for a specific sum for

compensatory damages. The Complaint states only that Powers "feels" he should be paid $5,000 an acre plus a 12.5 percent royalty by Equitable. While it appears from the face of the Complaint that at least one of the tracts at issue contains approximately 46 acres, the court cannot determine from the information provided the entire acreage at issue. Also, the Complaint contains no information regarding how much, if any, coalbed methane Equitable has removed from Powers's lands or at what cost or with what profit. From the court's reading of the Complaint, it is clear that Powers asserts that no contract or agreement exists between him and Equitable. Instead, the Complaint alleges that Equitable was given the right to explore for and recover the coalbed methane on Powers's land as a result of an order of the Board allowing forced-pooling. Powers has not, however, provided the Board's full order to the court. Powers has filed one page which he claims is a petition of the Board's order allowing the forced pooling of his land. (Exhibit D4 to Complaint). This order states any nonparticipating mineral owners should receive $5.00 per acre per year from the date of the order until production commenced and, thereafter, should receive a royalty of 12.5 percent of the net proceeds. Therefore, if Powers can show that he owns these properties, and that he retains the rights to the coalbed methane under the properties, he should be entitled to some compensation for Equitable's taking. Based on the information contained in the Complaint, however, the court cannot determine what amount Powers asserts he should receive as compensatory damages.

The Complaint does contain a specific request for the court to award Powers $10 million in punitive damages. Under Virginia law "[p]unitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others."

*Jordan v. Sauve*, 247 S.E.2d 739, 741 (Va. 1978) (quoting *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 277 (Va. 1967)). Punitive damages "are allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he has acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations. Wilful or wanton conduct imports knowledge and consciousness that injury will result from the act done." *Giant of Va.*, 152 S.E.2d at 277.

Here, Powers claims that representatives of Equitable have purposefully conspired to testify falsely and falsify public records in an effort to deprive him of his ownership interest in certain lands and the coalbed methane located under those lands. If such allegations are true, as they must be assumed to be at this stage, they would "evince a conscious disregard of the rights of others," and Powers would be entitled to claim punitive damages in some amount. While a jury considering the facts may not award Powers $10 million in punitives, it could easily award in excess of the jurisdictional amount of more than $75,000.00. That being the case, I find that Powers's Complaint alleges facts specific to satisfy the amount in controversy required by 28 U.S.C. § 1332. Therefore, I find that the court has subject matter jurisdiction over Powers's claims, and I recommend that the court deny the Motion on this ground.

The Motion also seeks dismissal of Powers's Complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). For quite some time, this court has cited *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that in order to grant a motion to dismiss, it must appear certain that the plaintiff

cannot prove any set of facts in support of his claim entitling him to relief. *See also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the "no set of facts" language from *Conley* has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).

In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of ... 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*, No. 07-1015, 556 U.S. ____, slip op. at 14-15, (May 18, 2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. ... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. ...
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

(Internal citations omitted.)

While Powers's Complaint may not be as artfully drafted as it could be, it is not a "threadbare recital" of "conclusory statements." In fact, Powers's Complaint contains eight pages of very specific factual allegations. If Powers's Complaint is lacking in any area, it is in its lack of reference to any specific cause of action or legal conclusions to be drawn from the facts alleged. Nonetheless, based on *Twombly & Iqbal,* the court should assume the facts asserted are true and determine whether those facts present a plausible claim.

Since this court's jurisdiction is based upon diversity, as it is in this case, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 519, 531 (1990); *Nguyen,* 44 F.3d at 237; *Merlo v. United Way of Am.*, 43 F.3d 96, 102 (4th Cir. 1994). This court sits in Virginia. Under Virginia law, issues regarding real estate are governed by the law of the state where the property is located. *See Mort v. Jones*, 51 S.E. 220 (Va. 1906). Furthermore, under Virginia law, claims for personal injury, whether they be for property damage or conversion, are governed by the law of the state where the injury occurred. *See Ryder Truck Rental, Inc. v. UTF Carriers, Inc*., 790 F. Supp. 637 (W.D. Va. 1992).

The Complaint in this case sets forth facts sufficient to state one or more causes of action under Virginia law. The Complaint alleges that Equitable is taking coalbed methane, which Powers alleges that he owns, without proper compensation. Powers seeks an accounting to ascertain the amount of royalties Equitable owes him. He also seeks a court ruling that he is the rightful owner of the coalbed methane being taken by Equitable. Powers further alleges that representatives of Equitable have conspired to engage in a series of illegal actions in an attempt to deprive him of his ownership interests in the tracts of land at issue. While Powers does not state so in his Complaint, these facts are sufficient to allege causes of action for conversion, conspiracy and an accounting under Virginia law. *See PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003) (any wrongful exercise over another's goods, including sums of money, in denial of the lawful owner's rights states a claim for conversion). *Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.,* 453 S.E.2d 261, 267 (Va. 1995) (common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means, and the foundation of a civil action of conspiracy is the damage caused by the acts committed in furtherance of the conspiracy); *Vilwig v. B & O R.R. Co.*, 79 Va. 449 (1884) (the jurisdiction of the courts in equity in matters of account involving the transactions and dealings of trustees and agents is well-established). That being the case, I will recommend that the court deny the Motion insofar as it seeks to dismiss Powers's Complaint for failing to state a claim.

**PROPOSED FINDINGS OF FACTS AND
CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now

submits the following formal findings, conclusions and recommendations:

1. This court must construe the plaintiff's Complaint liberally based on his status as a pro se litigant;

2. The burden of proving subject matter jurisdiction under Rule 12(b)(1) is on the plaintiff;

3. As the plaintiff is a resident of Idaho, and the defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania, the plaintiff has shown diversity of citizenship;

4. To meet the amount in controversy requirement of 28 U.S.C. § 1332, a plaintiff must show that the matter in controversy exceeds $75,000, exclusive of interest and costs;

5. The plaintiff's Complaint does not contain a demand for a specific sum for compensatory damages, and the court cannot determine what amount the plaintiff asserts he should receive as such;

6. However, the plaintiff's Complaint does contain a specific request for $10 million in punitive damages;

7. Under Virginia law, punitive damages are allowable where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others;

8. The plaintiff's allegations, which must be accepted as true, that representatives of the defendant purposefully conspired to testify falsely and falsify public records in an effort to deprive him of his ownership interest in certain lands and the coalbed methane located thereunder, evince a conscious disregard of the rights of others;

9. Although a jury may not award the plaintiff $10 million in punitive damages, it could award in excess of the jurisdictional amount;

10. Thus, the plaintiff can satisfy the amount in controversy requirement of

28 U.S.C. § 1332;

11. Therefore, the court has subject matter jurisdiction over the plaintiff's claims, and the defendant's Motion should be denied on this ground;

12. Under *Twombly* and *Iqbal*, in order to survive a 12(b)(6) motion to dismiss for failure to state a claim, the pleadings must allege enough to make it clear that relief is plausible, which is determined by the presence of factual allegations that support legal conclusions;

13. The plaintiff has alleged facts sufficient to support causes of action, arguably, for conversion, civil conspiracy and an accounting under Virginia law; and

14. Thus, the defendant's Motion should be denied on this ground.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the Motion.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and

recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 26th day of January 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE