IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **TRULAH F. POWERS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09CV00055 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **EQUITABLE PRODUCTION** | ) | By: James P. Jones |
| **COMPANY,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Trulah F. Powers, Pro Se Plaintiff; Scott W. Mullins, Scott W. Mullins, P.C., Coeburn, Virginia, for Defendant.*

In this civil action, I will grant the defendant's Motion for Summary Judgment.

I

Leonard O. Powers, now deceased, brought this case, pro se, against Equitable Production Company, now named EQT Production Company ("EQT") in 2009.[1]  Soon after, EQT filed a motion to dismiss, and Leonard Powers filed a motion for summary judgment.  Both motions were denied.  In February 2010,

---

[1] The subject matter jurisdiction of this court is based on diversity of citizenship and amount in controversy.

Leonard Powers again moved for summary judgment, which was denied. Leonard Powers passed away in May 2010, and his widow, Trulah F. Powers, was substituted as the plaintiff.[2] The basic claim in the lawsuit is that Mr. Powers and now Mrs. Powers is the sole owner of certain coalbed methane ("CBM"), superior to any claims of other putative owners, and that EQT, the lessee of the CBM, has failed and refused to recognize that fact.

EQT has filed the current Motion for Summary Judgment. The plaintiff opposes the motion, which has been briefed and is ripe for decision.

II

In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, Va. Code §§ 45.1-361.1 through 44 (2002 & Supp. 2011) ("Gas Act"), regulating methods by which CBM could be captured for commercial use. Pursuant to the Gas Act, gas interests may be force pooled, and owners of the gas interests are entitled to royalty payments for CBM that is captured from their properties. *See* Va. Code Ann. § 45.1-361.21. When there are conflicting claims of ownership over gas interests, the royalties are paid into escrow funds. *See* Va. Code Ann. § 45.1-351.22.

---

[2] For the remainder of this Opinion, "Powers" refers to Trulah F. Powers.

Powers' claims arise from two tracts of land located in Dickenson County, Virginia, in this judicial district, referred to as Tract #2 and Tract #3. The tracts have been subject to forced pooling under the Gas Act to allow for exploration and collection of CBM by EQT. Powers has received five-sixths of the CBM royalties from Tract #2. The other one-sixth of the royalties has been deposited into escrow because of a dispute between Powers and Sandra Powers Strickfadden over the ownership of the one-sixth interest. There is also a dispute with the heirs of one M.I. Kiser over the ownership of Tract #3. All royalties due to the owners of Tract #3 have been escrowed by order of the Virginia Gas and Oil Board pending resolution of the ownership dispute.

In the Complaint, Powers makes several allegations, which are outlined below.

Powers alleges that EQT has incorrectly included other individuals, including the Kiser heirs and Strickfadden, as persons who may have an ownership interest in the tracts. Powers asserts that she has a 100 percent ownership interest in each of the tracts.

Powers also alleges that EQT and the Gas and Oil Board failed to comply with procedures for placing royalties in escrow and releasing the funds from escrow when appropriate. Particularly, Powers alleges that EQT has not properly escrowed royalties for Tract #2.

Finally, Powers claims that EQT engaged in a conspiracy to shift tax liability to her property so that it could purchase the property at a tax sale. According to Powers, a note found on an official map indicated that liability for back taxes was shifted from property owned by the Kiser heirs to Tract #3, which Powers alleges she owns. The note read in essence, "Powell to Baker, move taxes." According to Powers, Powell and Baker were employees of EQT or its predecessor. Powers further alleges that EQT representatives incorrectly testified to the Gas and Oil Board that the Kiser heirs were paying taxes on one of the tracts identified with the tax number 18771. She alleges that property was listed for sale for back taxes several times even though she and her husband had been paying the taxes and none were due.

Powers requests that this court (1) order EQT to remove Strickfadden and others as potential owners of the tracts, leaving Powers as the owner of 100 percent of the property; (2) order EQT to release all royalties held in escrow, plus interest and costs, and pay a regular direct royalty payment to her; (3) order EQT to pay $5000 per acre, plus a 12.5 percent royalty for the CBM; and (4) award her $10,000,000 in punitive damages.

EQT maintains that it is entitled to summary judgment. First, it argues that no facts alleged by the plaintiff support a recognized cause of action. It asserts that Powers has not provided any evidence showing who wrote the note found on the

property map and has not linked the note or the tax sales to EQT.  The note cannot be found.

Second, it argues that Powers settled her claim as to Tract #2 with EQT. EQT has presented a settlement agreement between Powers, EQT, and Pine Mountain providing that Pine Mountain would pay Powers a sum of money in exchange for Pine Mountain's consent for the Gas and Oil Board to release the Tract #2 royalties from escrow.  Because of the agreement, Powers has received five-sixths of the Tract #2 royalties.  Relatedly, EQT argues that the claim is barred by res judicata due to a state court finding that Powers had settled her claim with EQT.

Third, EQT argues that Powers' disputes with Strickfadden and the Kiser heirs cannot be properly adjudicated in this action because those individuals have not been joined as parties. [3]

Fourth, EQT argues that the plaintiff's tort claims are barred by the statute of limitations.

Both Trulah Powers and Leonard Powers were deposed by EQT, and EQT has provided an affidavit from Rita McGlothlin-Barrett, the Regional Land Manager for EQT, as well as other evidence in support of its Motion for Summary

---

[3] Early on in this case, the magistrate judge pointed out to Powers the absence of the proper parties. (Order, Aug. 16, 2010, ECF No. 60).  Of course, a federal court may not have subject-matter jurisdiction if any additional parties were not of diverse citizenship.

Judgment. Along with the Complaint, the plaintiff provided exhibits, including portions of testimony before the Gas and Oil Board, a report of the Gas and Oil Board, various maps and deeds, and excerpts from books and articles. After the defendant's Motion for Summary Judgment was filed, the court advised Powers of her right to file sworn affidavits, unsworn declarations made under penalty of perjury, or other evidence. However, Powers has not filed any further evidence with her brief in opposition to the defendant's motion.

### III

A party is entitled to summary judgment only when there are no genuine issues of material fact. Fed. R. Civ. P. 56(a). To determine whether genuine issues of material fact exist, the court should consider the pleadings, discovery materials on file, and any affidavits. Fed. R. Civ. P. 56(c)(1)(A). For a dispute to be genuine, there must be evidence such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted when an issue of material fact "is merely colorable." *Id.* at 249. The nonmoving party must present affidavits, depositions, or other evidence to show that there is a genuine issue for trial. *Celotex Corp. v.* Catrett, 477 U.S. 317, 324 (1986). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial," summary judgment should be granted. *Id.* at 322.

I find that there are no genuine issues of material fact about any of Powers' claims, and summary judgment for the defendant is appropriate.

Powers makes several allegations regarding the ownership of Tracts #2 and #3 and requests that the amounts in escrow be released to her. However, she has not shown, or even alleged with any specificity, that EQT, in its determination that the ownership of one-sixth of Tract #2 and all of Tract #3 are in dispute, has acted in a way that is inconsistent with state procedures and the orders of the Gas and Oil Board.

The facts on which the defendant and plaintiff agree show that EQT is correct that the ownership of the tracts is unsettled. With regard to Tract #2, there is a 1975 deed naming Strickfadden as a record owner of a portion of the property. (ECF No. 68, Attach. 11.) In 2009, upon receiving a letter from Leonard Powers, EQT conducted a title search to confirm the Powers' share in the property, and EQT adjusted the Powers' share upward to five-sixths. EQT maintains that the 1975 deed of one-sixth of the property to Strickfadden remains in effect. In her deposition, Powers agreed that the ownership dispute over the one-sixth interest in Tract #2 existed but was "not something that [she] and EQT are going to be fighting about." (T. Powers Dep. 17.)

With regard to Tract #3, a 1911 deed purports to convey the tract to M.I. Kiser. (ECF No. 68, Attach. 14.) Powers maintains that Kiser and heirs did not take possession or ownership of the property. Upon discovering the 1911 deed, Leonard Powers and his sister, Bonnie Powers, executed a quitclaim deed to themselves for the property, and in Trulah Powers' deposition, she argued that she owned the property because it was abandoned or subject to adverse possession.

Powers may believe she has a strong legal argument to establish her ownership, but her ownership-related claims against EQT have no merit. There is no evidence that EQT has misled the Gas and Oil Board to avoid paying royalties directly to Powers rather than to the escrow accounts, and EQT has presented documents (ECF No. 18, Attach. 3 and 4) outlining its internal review of the ownership disputes. Although ownership is disputed, Powers has not added any of the potential owners as defendants in this suit. The royalties in escrow cannot be released until these ownership disputes are resolved. Va. Code Ann. § 45.1-361.22(5). When the disputes are resolved, the Gas and Oil Board will order EQT to pay the principal amount in the account and accrued interest, less escrow account fees. *Id.*

Additionally, to the extent Powers argues that Pine Mountain wrongfully claims ownership in the CBM rights, it appears the dispute was settled. Powers did

not join Pine Mountain as a party in this suit and has not alleged any wrongdoing by EQT that would relate to her disagreement with Pine Mountain.

Powers makes two specific claims of wrongdoing by EQT in the Complaint. Powers first claims that EQT conspired with others to force a tax sale of Powers' property. With regard to this allegation, Powers has presented insufficient evidence to overcome summary judgment. Powers describes a note, written on a map in the Commissioner of Revenue's Office, which she alleges was used to transfer tax liability that led to attempted tax sales of her property in 1998 and 2000. The note allegedly said "Powell to Baker, move taxes." Bob Powell and Dennis Baker were EQT employees. The note was allegedly seen by Leonard Powers, now deceased, and his neice's husband, Rick Edwards. Powers has not produced any evidence of the note. In Powers' deposition, she stated that Leonard Powers returned to the Commissioner of Revenue's Office but could not find the note and was told by office employees that there never was a map with a note written on it.

Powers has not provided evidence from any of the individuals she claims were involved in the conspiracy, including Shelby Willis, a former employee of the Commissioner of Revenue's Office; Henry Vanover, who conducted tax sales for the county; and Freddie Mullins, who worked for Henry Vanover and allegedly acted defensive when confronted by Leonard Powers. Powers has failed to present

any evidence that would show how EQT was involved in any tax sale relating to her property. Furthermore, the tax sales were never completed, and Powers was not required to pay any money to the County to stop the tax sales. Therefore, no genuine issue of fact exists.

Powers also alleges that EQT failed to comply with its obligations to deposit royalties in escrow. The Complaint states, "According to Bob Wilson and Diane Davis in 2008, EPC or et al had not Escrowed any money from Tract # 2, Well # V-536721." (Compl. at 5.) However, Powers has not presented any evidence that EQT has failed to escrow any money for Tract #2, and EQT asserts that it has escrowed one-sixth of the royalty payments due on Tract #2.

IV

For the foregoing reasons, it will be necessary to grant the defendant's Motion for Summary Judgment and enter judgment in its favor. [4]

DATED:  March 31, 2012

/s/  James P. Jones
United States District Judge

---

[4] There is pending in this court a class action suit, *Adair v. EQT Production Co.*, *et al.*, Case No. 1:10CV00037, in which claims are made against EQT on behalf of forced-pooled CBM lessors, which may include Powers. I do not consider or resolve any claims made in the *Adair* case in this opinion.